UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION


RAY A. B.,[1]

               Plaintiff,

      v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

               Defendant.

Case No. 3:19-cv-00837-YY

OPINION AND ORDER

YOU, Magistrate Judge:

Plaintiff Ray B. seeks judicial review of the final decision by the Social Security

Commissioner ("Commissioner") denying his applications for Disability Insurance Benefits

("DIB") under Title II of the Act, 42 U.S.C. §§ 401-433, and Supplemental Security Income

("SSI") under Title XVI of the Act, 42 U.S.C. §§ 1381-1383. This court has jurisdiction to

review the Commissioner's decision pursuant to 42 U.S.C. §§ 405(g) and 1383(g)(3). For the

reasons set forth below, that decision is REVERSED and REMANDED for further proceedings.

Plaintiff protectively filed for DIB and SSI on October 17, 2016, alleging disability

beginning on September 1, 2010. Tr. 200-13. At the hearing, plaintiff amended his alleged

---

[1] In the interest of privacy, the court uses only plaintiff's first name and the first initial of his last
name.

onset date to August 3, 2016.  Tr. 13, 35.  His applications were initially denied on January 4,

2017, and upon reconsideration on March 28, 2017.  Tr. 119-28, 133-38.  Plaintiff requested a

hearing before an Administrative Law Judge ("ALJ"), which took place on November 26, 2018.

Tr. 30-60.  After receiving testimony from plaintiff and a vocational expert ("VE"), ALJ John

Sullivan issued a decision on December 17, 2018, finding plaintiff not disabled within the

meaning of the Act.  Tr. 13-24.  The Appeals Council denied plaintiff's request for review on

April 12, 2019.  Tr. 1-3.  Therefore, the ALJ's decision is the Commissioner's final decision and

subject to review by this court.  20 C.F.R. § 416.1481.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on proper

legal standards and the findings are supported by substantial evidence in the record.  42 U.S.C.

§ 405(g); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).  This court must weigh the

evidence that supports and detracts from the ALJ's conclusion and "'may not affirm simply by

isolating a specific quantum of supporting evidence.'"  *Garrison v. Colvin*, 759 F.3d 995, 1009-

10 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)).  This

court may not substitute its judgment for that of the Commissioner when the evidence can

reasonably support either affirming or reversing the decision.  *Parra v. Astrue*, 481 F.3d 742, 746

(9th Cir. 2007).  Instead, where the evidence is susceptible to more than one rational

interpretation, the Commissioner's decision must be upheld if it is "supported by inferences

reasonably drawn from the record."  *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008)

(citation omitted); *see also Lingenfelter*, 504 F.3d at 1035.

## SEQUENTIAL ANALYSIS AND ALJ FINDINGS

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 416.920; *Lounsbury v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006) (discussing *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999)).

At step one, the ALJ found plaintiff had not engaged in substantial gainful activity since September 30, 2015, the alleged onset date. Tr. 15. At step two, the ALJ determined plaintiff suffered from the following severe impairments: status-post right great toe amputation, obesity, peripheral arterial disease, peripheral neuropathy, asthma, and bipolar disorder. Tr. 16. The ALJ recognized other impairments in the record, i.e., insulin-dependent diabetes mellitus, diabetic retinopathy, carpal tunnel syndrome, alcohol abuse, hypertension and hyperlipidemia but concluded these conditions did not cause more than minimal limitations. *Id.*

At step three, the ALJ found plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. *Id.* The ALJ next assessed plaintiff's residual functional capacity ("RFC") and determined he could perform light work as defined in 20 C.F.R. § 416.967(b), with these exceptions: sit for six hours; stand and/or walk for two hours; push/pull within the lift/carry limitations; climb ramps and stairs occasionally; no climbing of ladders, ropes, or scaffolding; kneel, crouch, and crawl occasionally, with all other postural activities frequent; avoid exposure to irritants; perform simple, routine tasks with a

reasoning level of two or less; make simple work-related decisions; interact with coworkers, supervisors, and the public occasionally; and changes in the workplace occasionally.  Tr. 18-19.

At step four, the ALJ found plaintiff unable to perform past relevant work.  Tr. 22.

At step five, the ALJ found that considering plaintiff's age, education, work experience, and RFC, he could perform jobs that existed in significant numbers in the national economy, including small products assembler II, electronics worker, and marker.  Tr. 23.  Thus, the ALJ concluded plaintiff was not disabled.  *Id.*

## DISCUSSION

Plaintiff argues that the ALJ (1) erroneously rejected the medical opinion evidence of state agency psychologists Dr. Susan South and Dr. Joshua Boyd that plaintiff is limited to one- to two- step instructions and tasks; (2) erroneously interpreted the RFC as limiting plaintiff to light, rather than sedentary work, which resulted in (3) erroneous reliance on VE testimony; (4) improperly applied Agency guidance; (5) improperly discounted plaintiff's subjective symptom testimony; (6) erroneously rejected the opinions of treating registered nurse ("RN") Mary Shockey; and (7) failed to include all supported functional limitations in the RFC.

## I.    The RFC

Plaintiff contends the ALJ's RFC determination is flawed because substantial evidence does not support the ALJ's finding that plaintiff can do "light" jobs.  Plaintiff assert this error is not harmless because had he been properly limited to sedentary rather than light work, the Agency's sedentary grid rule would require that he be found disabled as of his fiftieth birthday. Pl. Br. 8-11 (citing 20 C.F.R. § 404, subpt. P, Rule 201.10).

The RFC is the most a person can do, despite his physical or mental impairments.  20 C.F.R. §§ 404.1545, 416.945.  In formulating an RFC, the ALJ must consider all medically

determinable impairments, including those that are not "severe," and evaluate "all of the relevant medical and other evidence," including the claimant's testimony. *Id.*; SSR 96-8p, *available at* 1996 WL 374184. In determining a claimant's RFC, the ALJ is responsible for resolving conflicts in the medical testimony and translating the claimant's impairments into concrete functional limitations in the RFC. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008). Only limitations supported by substantial evidence must be incorporated into the RFC and, by extension, the dispositive hypothetical question posed to the VE.

> ### A.   One- to Two-Step Tasks Analysis

Plaintiff argues the ALJ erred by failing to properly consider the RFC functional limitations set forth by agency reviewing psychologists Dr. Susan South and Dr. Joshua Boyd— specifically the limitation to understanding and carrying out simple one- to two-step instructions and tasks. Pl. Br. 24.

The ALJ gave "some weight" to Dr. Boyd and Dr. South's opinions "but f[ound] the evidence supports additional limitations to standing and/or walking for two hours per eight-hour workday, with limitations to occasional interaction with others, occasional changes, and only simple work-related decisions." Tr. 21. Crucially, the ALJ provided no explanation for his failure to include the limitation to one- to two-step tasks in the RFC. Instead, the ALJ found that plaintiff "is able to perform simple, routine tasks with a reasoning level of 2 or less." Tr. 19. In failing to include the one- to two-step limitation in the RFC, the ALJ "effectively rejected" the opinions of Dr. South and Dr. Boyd. *See Kimble v. Berryhill*, No. 3:15-cv-01641-JE, 2017 WL 3332256, at *4 (D. Or. Aug. 4, 2017) (citing *Bobbitt v. Colvin*, No. 3:13-cv-01320-HZ, 2014 WL 2993738, at *9 (D. Or. Jul. 1, 2014)). However, an ALJ may only "reject the opinion of a non-

examining physician by reference to specific evidence in the record." *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998).

Moreover, the error is not harmless. The ALJ asked the VE to identify jobs at "reasoning level two or less," and the VE identified jobs that require Level Two reasoning. Tr. 56-57; *see* DOT #739.687-030 (small products assembler II); DOT #726.687-010 (electronics worker); DOT #209.587-034 (marker). The Ninth Circuit has held that a limitation to one- to two-step tasks is not consistent with Level Two reasoning. *Rounds v. Comm'r of Soc. Sec. Admin*, 807 F.3d 996, 1003 (9th Cir. 2015). There is "an apparent conflict" between a one- to two-step task limitation and "the demands of Level Two reasoning, which requires a person to apply commonsense understanding to carry out detailed but uninvolved written or oral instructions." *Id.* (quotations marks and alterations omitted); *see id.* (recognizing that "Level One reasoning requires a person to apply commonsense understanding to carry out simple one- or two-step instructions") (quotation marks omitted); *see also* DOT (4th ed., rev. 1991), App. C, § III, *available at* 1991 WL 688702. Thus, this case must be remanded for the ALJ to accept the opinions of Dr. South and Dr. Boyd that plaintiff is limited to one- to two-step tasks or provide legally sufficient reasons for rejecting them.

### B.    Classification of Work Restrictions

Plaintiff asserts the ALJ erred when he "expressed" plaintiff's RFC as "light" because his finding that plaintiff is limited to standing and/or walking for two hours per eight-hour workday "in essence" limits plaintiff to sedentary work. Pl. Br. 9 (citing SSR 96–8, at *3).

SSR 96-8p requires the RFC to identify a claimant's functional limitations or restrictions and assess his work-related abilities on a function-by-function basis. *Id.* This includes the functions related to the claimant's physical abilities, mental abilities, and any other abilities

affected by the claimant's impairment or impairments.  20 C.F.R. §§ 404.1545(b)-(d), 416.945(b)-(d).  After the function-by-function assessment, the ALJ expresses the RFC "in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy."  SSR 96-8p, at *1.  The RFC assessment must contain a "thorough discussion and analysis" of the objective medical and other evidence, including pain, and a "logical explanation of the effects of these symptoms on the individual's ability to work."  *Id.* at **7-8.

Here, the ALJ conducted a function-by-function assessment with a thorough discussion of the evidence and a logical explanation of the effects of plaintiff's symptoms.  Tr. 18-22.  As such, the ALJ complied with the requirements of SSR 96-8p in assessing plaintiff's RFC that he could perform "light" work with exceptions.[2]  *See supra* (citing Tr. 18-19).

Plaintiff contends the RFC's two-hour standing-and-walking limitation conflicts with the light work description in SSR 83-10.  Pl. Br. 8-10.  SSR 83-10 specifies that light work requires "frequent lifting and carrying of objects weighing up to 10 pounds," and "[s]ince frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the *full* range of light work requires standing or walking, off and on, for a total of approximately 6 hours out of an 8-hour workday."  SSR 83-10, *available at* 1983 WL 31251, at *5-6 (emphasis added); *accord* 20 C.F.R. §§ 404.1567(b), 416.967(b).  Thus, SSR 83-10's six-hour standing/walking requirement applies to only a *full* range of light work.

Here, the ALJ found that plaintiff had the RFC to perform *less* than a full range of light work and limited his standing and walking to two hours a day.  Tr. 18-19; *see Jones v. Colvin*,

---

[2] Moreover, "there is a distinction between what an adjudicator must *consider* and what the adjudicator must *explain* in the disability determination or decision[.]"  SSR 06-03p, *available at* 2006 WL 2329939, at *6 (emphasis added).

2014 WL 657914, at *7 (C.D. Cal. Feb. 19, 2014) (standing/walking limitation did not conflict with SSR 83-10 because ALJ determined that plaintiff could perform a range, not a full range, of light work).  In addition, SSR 83-10 recognizes that not *all* light work jobs require standing or walking for six hours.  *See* SSR 83-10, at *5 ("A job is also in [the light work] category when it involves sitting most of the time but with some pushing and pulling of arm-hand or leg-foot controls[.]"); *see also Thompson v. Colvin*, 2015 WL 1476001, at *5 (C.D. Cal. Mar. 31, 2015) (finding no inconsistency between claimant's RFC and SSR 83-10 because "the job of mail clerk could be done spending only two hours standing or walking"); *Jones*, 2014 WL 657914, at *7.  Thus, no conflict exists between plaintiff's RFC and the light work description in SSR 83-10.

Plaintiff also argues the VE's testimony that plaintiff can do light work is inconsistent with the *Dictionary of Occupational Titles* ("DOT") rules and faults the ALJ for not resolving that conflict.  Pl. Br. 10-11.  In particular, plaintiff contends that "jobs that are classified as 'light' by the DOT based on the fact that the worker would be on his feet more than two hours in an eight-hour workday . . . become *sedentary* when performed in the seated position."  Pl. Br. 11 (emphasis in original).

The DOT's definition of light work is similar to SSR 83-10,[3] and, again, there is no discrepancy.  The ALJ did not find plaintiff capable of performing a "full range" of light work.

---

[3] The DOT defines light work as:

> Light Work—Exerting up to 20 pounds of force occasionally, and/or up to 10 pounds of force frequently, and/or a negligible amount of force constantly (Constantly: activity or condition exists 2/3 or more of the time) to move objects. Physical demand requirements are in excess of those for Sedentary Work. Even though the weight lifted may be only a negligible amount, a job should be rated Light Work: (1) when it requires walking or standing to a significant degree; or (2) when it requires sitting most of the time but entails pushing and/or pulling of arm or leg controls; and/or (3) when the job requires

Instead, the ALJ found plaintiff capable of performing only those light-work positions that involve significantly limited standing or walking. Therefore, the VE's testimony was not inherently inconsistent with DOT, and the ALJ did not err by failing to inquire further into the VE's testimony.

## II.    VE Testimony and the DOT

Plaintiff, relying on SSR 00-4p, asserts that the VE's testimony conflicts with the DOT and the ALJ was required to resolve the conflict to support his finding that plaintiff was not disabled. Pl. Br. 11.

SSR 00–4p "clarifies [SSA's] standards for the use of [VEs] who provide evidence at hearings before [ALJs]." SSR 00–4p, *available at* 2000 WL 1898704, *1. This policy interpretation ruling requires that "[o]ccupational evidence provided by a VE or VS generally should be consistent with the occupational information supplied by the DOT." *Id.* at *2. To meet this requirement, "[w]hen a VS or VE provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE or VS evidence and the information provided in the DOT." *Id.* at *4; *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (recognizing an ALJ's duty to ask about potential conflicts between VE testimony and the DOT). "When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled." SSR 00–4p at *2; *Massachi*, 486 F.3d at 1152-53.

---

working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible.

DOT (4th ed., rev. 1991), App. C, *available at* 1991 WL 688702.

In *Martin v. Colvin*, No. 3:14-CV-01603-SB, 2016 WL 890106 (D. Or. Feb. 9, 2016),

*report and recommendation adopted sub nom. Martin v. Comm'r Soc. Sec. Admin.*, No. 3:14-cv-

01603-SB, 2016 WL 890923 (D. Or. Mar. 8, 2016), and *Willrodt v. Astrue*, No. 09-cv-2000,

2010 WL 2850785 (C.D. Cal. July 19, 2010), the plaintiffs similarly argued that the jobs

identified by the VE, which were classified as light work under the DOT, exceeded their RFC

limitation of standing and/or walking for up to two hours per day.[4]  *Martin*, 2016 WL 890106, at

*14.  Both claimants further argued that the ALJ erred by failing to obtain a reasonable

explanation for the apparent conflict between the DOT and the VE's testimony.  *Id.*

> This argument was rejected in both cases, as explained in *Martin*:
>
> In rejecting the claimant's arguments, the *Willrodt* court observed that "not all
> jobs that are classified as 'light work' require standing or walking for six hours in
> an eight-hour day."  The court went on to emphasize that, although the Dictionary
> of Occupational Titles classified the jobs of sewing machine operator and
> electronics worker as light work, it also defines light work as entailing "'walking
> or standing to a significant degree,' or 'sitting most of the time but entails pushing
> and/or pulling of arms or leg controls,' or 'working at a production rate pace
> entailing the constant pushing and/or pulling of materials even though the weight
> of those materials is negligible.'"  In other words, the use of the disjunctive "or"
> suggested that the jobs of sewing machine operator and electronics worker could
> be performed in a mostly seated position, and thus the plaintiff failed to show that
> there was a material conflict with the VE's testimony.

*Id.* (quoting *Willrodt*, 2010 WL 2850785, at *2).

Here, too, plaintiff has failed to show that a material conflict exists between the VE's

testimony and the DOT.  For example, the DOT classifies the job of "small products assembler

---

[4] Numerous district courts within the Ninth Circuit have been asked to decide whether an ALJ
errs by relying on VE testimony about available light work positions even though the claimant
is limited to standing and/or walking for a total of just two hours out of an eight-hour
workday.  *See Smith v. Comm'r of Soc. Sec. Admin.*, No. CV-19-01586-PHX-DMF, 2020 WL
2768697, at *13 (D. Ariz. May 28, 2020) (collecting cases).  In each of these cases, the court
held the ALJ did not err at Step 5 where the ALJ identified the claimants' limitations that
made them incapable of performing the full range of light work and the VE identified light
work positions that the claimants could still perform.

II" as "light work," but also describes the job as entailing "walking or standing to a significant degree," "sitting most of the time [with some] pushing and/or pulling of arm or leg controls; and/or . . . working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible." *Assembler, Small Products II*, DOT § 739.687–030, *available at* 1991 WL 680180 (emphasis added); *see Martin*, 2016 WL 890106, at *14. Thus, nothing in the DOT's description of the small products assembler II job requires standing or walking six hours in an eight-hour workday. To the contrary, as the VE testified, the positions allow for "sitting or standing[.]" Tr. 57.

Accordingly, the ALJ did not err in relying on the VE's statement that his testimony was consistent with the DOT.

## III.    Agency Guidance

Plaintiff asserts that "the Commissioner's sub-regulatory policy guidance" required the ALJ to use the "sedentary" rule for the standing-and-walking limitation that he imposed in this case. Pl. Br. 13. In support, plaintiff cites the agency's Program Operations Manual System ("POMS") "standing/walking/sitting requirements":

> Assume that an RFC for standing/walking/sitting less than the top level of standing/walking/sitting requirements represents an RFC falling between exertional levels of work.

POMS DI 25025.015(A), *available at* https:/secure.ssa.gov/poms.nsf/lnx/0425025015 (last visited October 17, 2020). Plaintiff contends that where, as here, "[e]xertional capacity falls between rules with different conclusions[,]" i.e., light and sedentary, ALJs are directed to apply the "higher-numbered rule and find the claimant not disabled if you conclude the claimant has a slightly reduced capacity for the higher level of exertion; or lower-numbered rule and find the

claimant disabled if you conclude the claimant has a significantly reduced capacity for the higher

level of exertion." Pl. Br. 13 (citing POMS DI 25025.015(D)).

While the POMS may generally advise application of the lower exertional level when

there is evidence of significant erosion, the ALJ is under no obligation to adhere to such a

practice; in situations where the grids do not accurately and completely describe a claimant's

RFC, the grids simply exist as a "reference point for decisionmaking," which the ALJ may or

may not elect to rely upon. *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 578

(9th Cir. 1988) (Pregerson, J., concurring). Moreover, the POMS does "not impose judicially

enforceable duties on either the court or the ALJ." *Kennedy v. Colvin*, 738 F.3d 1172, 1177-78

(9th Cir. 2013). SSRs, on the other hand, are binding on ALJs and entitled to deference by the

courts so long as they are consistent with the Social Security Act.[5] *See Bray*, 554 F.3d at 1224.

SSR 83-12 states it is "advisable" for an ALJ to consult a VE when presented with a

situation where the "exertional level falls between two rules which direct opposite conclusions,

i.e. 'not Disabled' at the higher exertional level and 'Disabled' at the lower exertional level" and

"the individual's exertional limitations are somewhere 'in the middle' in terms of the regulatory

criteria for exertional ranges of work."[6] SSR 83-12; *see also Thomas*, 278 F.3d at 960.

That is what the ALJ did here. It is undisputed that plaintiff's RFC falls below the "light"

and above the "sedentary" work definitions. 20 C.F.R. § 404.1567. The ALJ found:

> If the claimant had the residual functional capacity to perform the full range of
> light work, a finding of "not disabled" would be directed by Medical-Vocational

[5] Contrary to the Commissioner's assertions, *see* Def. Br. 18-19, plaintiff does not solely rely
on the POMS. *See* Pl. Br. 17-18 (citing SSR 83-12).

[6] POMS has a similar provision. *See* POMS DI 25025.015D ("If necessary, use the assistance
of a Vocational Specialist to determine which rule most closely approximates the claimant's
RFC and vocational factors of age, education, and past work experience.").

Rule 202.18 and Rule 202.11.  However, the claimant's ability to perform all or
substantially all of the requirements of this level of work has been impeded by
additional limitations.  To determine the extent to which these limitations erode
the unskilled light occupational base, the Administrative Law Judge asked the
vocational expert whether jobs exist in the national economy for an individual
with the claimant's age, education, work experience, and residual functional
capacity.

Tr. 23.  The VE testified that given plaintiff's age, education, work experience, and residual

functional capacity, he had the capability to perform three different "light work" jobs.  Tr. 23,

56-57.  Having consulted a vocational expert and asked a hypothetical question properly

synthesizing all of the RFC limitations, the ALJ could thus reasonably conclude that plaintiff

could perform "enough light jobs in the national economy to warrant a finding of 'not disabled.'"

*Desrosiers,* 846 F.2d at 579-80; *see Bayliss,* 427 F.3d at 1217.  The ALJ then properly used the

Medical-Vocational Guidelines as a framework and consulted a VE to assist in determining

whether plaintiff's limitations prevented him from finding "other work that existed in significant

numbers in the national economy." Tr. 23.  Consequently, the ALJ did not improperly apply the

Guidelines as a framework, and the resulting finding of "not-disabled" was appropriate on this

basis.

**IV.    Subjective Symptom Testimony**

When a claimant has medically documented impairments that could reasonably be

expected to produce some degree of the symptoms complained of, and the record contains no

affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the

severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so."

*Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (citation omitted).  A general assertion that

the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not

credible and what evidence suggests the complaints are not credible."  *Dodrill v. Shalala*, 12

F.3d 915, 918 (9th Cir. 1993).  The proffered reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted).  If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing."  *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted).

Effective March 28, 2016, the Commissioner superseded Social Security Ruling ("SSR") 96-7p, governing the assessment of a claimant's "credibility," and replaced it with SSR 16-3p.  *See* SSR 16-3p, *available at* 2016 WL 1119029.  SSR 16-3p eliminates the reference to "credibility," clarifies that "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to consider all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms.  *Id.* at *1-2.  The ALJ must examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record."  *Id.* at *4.

Here, the ALJ recounted plaintiff's claims and testimony as follows:

> The claimant's representative asserted that as of August 2016, the claimant has had difficulty monitoring his medications and controlling his diabetes due to his mental health symptoms.  The claimant testified he missed several medical appointments when he was dealing with the death of his father in April 2016, and then he ended up losing his toe due to an ulcer that did not heal due to his diabetes.  He stated he cannot be on his feet more than two hours per day due to neuropathy in his legs and feet, and will walk for maybe 15 minutes or up to 30 minutes on flat ground, with a maximum of walking slowly for one hour.  He explained that his hip bothers him when sitting for longer than 30 minutes, and he needs to move around.  The claimant also noted that he experiences neuropathy in his hands and fingers now too, with pain, tingling, and cold. Although he estimated he could lift up to 50 pounds with one shoulder, he is not able to lift that much with his other shoulder, and he is not able to walk while carrying that much weight, but then stated he can no longer lift 50 pounds.  He

> testified he needs to take breaks while performing household chores.  For
> example, he noted that he and his wife recently moved into a house and needed
> to do a lot of work clearing out trash, replacing two windows, and cleaning up
> the property, but stated that he could only work 30 minutes at a time.  The
> claimant further testified he has difficulty focusing and concentrating, he has
> trouble organizing, he is easily distracted and easily overwhelmed, he is irritable
> and argumentative, and he is forgetful.

Tr. 19.  The ALJ then summarized the medical records, and stated: "Giving the claimant the

benefit of the doubt in light of the medical evidence, the undersigned finds that limitation to

standing and/or walking is limited to two hours per eight-hour workday and limited interaction

and changes in the workplace have been included."  Tr. 20-21.

Plaintiff argues the ALJ failed to make specific findings, i.e., he "notably omitted from

the . . . RFC finding [plaintiff]'s alleged limitations regarding his inability to focus and

concentrate, his need to alternate sitting, standing, and walking, his inability to stand still in one

spot, and his need to elevate his legs during the day because of his symptoms."[7]  Pl. Br. 21-23

(citing Tr. 44-45, 50-51).  Citing *Brown-Hunter v. Colvin*, 806 F.3d 487 (9th Cir. 2015), plaintiff

also asserts that the ALJ's omission runs afoul of Ninth Circuit precedent requiring an ALJ to

---

[7] Plaintiff also argues the ALJ erred because the legal standard he used in rejecting plaintiff's
subjective symptom testimony is incorrect and applies a higher standard than what the
applicable regulation requires.  Pl. Br. 22.  The language at issue can be characterized as
"boilerplate."  "The Ninth Circuit has expressly held that such boilerplate, without more, 'falls
short of meeting the ALJ's responsibility to provide 'a discussion of the evidence' and 'the
reason or reasons upon which' his adverse determination is based.'"  *Treichler v. Comm'r of
Soc. Sec. Admin*, 775 F.3d 1090, 1103 (9th Cir. 2014); *see also Laborin v. Berryhill*, 867 F.3d
1151, 1154 (9th Cir. 2017) (holding common boilerplate is of no probative value).  However,
the inclusion of this "flawed boilerplate language is not, by itself, reversible error and can be
harmless" if the ALJ provides specific, clear and convincing reasons to discount the
claimant's testimony.  *Laborin*, 867 F.3d at 1154 (citation omitted).  Here, the ALJ followed
the boilerplate with a detailed and cogent discussion of the reasons he rejected plaintiff's
subjective symptom testimony, and thus the inclusion of boilerplate is harmless.  *See* Tr. 19-
21.

present reasons for rejecting a plaintiff's specific testimony.  Pl. Br. 24.  In *Brown-Hunter*, the

Ninth Circuit held:

> Our review of the ALJ's written decision reveals that she did not specifically
> identify any such inconsistencies [between the plaintiff's testimony and the
> record]; she simply stated her non-credibility conclusion and then summarized
> the medical evidence supporting her RFC determination. This is not the sort of
> explanation or the kind of "specific reasons" we must have in order to review
> the ALJ's decision meaningfully, so that we may ensure that the claimant's
> testimony was not arbitrarily discredited. . . .  Because the ALJ failed to
> identify the testimony she found not credible, she did not link that testimony to
> the particular parts of the record supporting her non-credibility determination.
> This was legal error.

806 F.3d at 494.  The Ninth Circuit further concluded that the ALJ's error was not harmless.  *Id.*

"Although the ALJ summarized a significant portion of the administrative record in support of

her RFC determination, providing a summary of medical evidence in support of a residual

functional capacity finding is not the same as providing clear and convincing *reasons* for finding

the claimant's symptom testimony not credible."  *Id.* (emphasis in original).  Courts cannot

review whether the ALJ provided specific, clear, and convincing reasons for rejecting a

claimant's testimony where "the ALJ never identified *which* testimony she found not credible,

and never explained *which* evidence contradicted that testimony."  *Id.* (emphasis in original).

Here, the ALJ provided a thorough summary of plaintiff's testimony, totaling two pages

and eight paragraphs.  Tr. 20-21.  However, nowhere in the decision did the ALJ articulate why

he rejected plaintiff's testimony that he can sit on a chair at a workstation for "half an hour, at the

very most"; "can stand to be on [his] feet probably a half an hour"; "need[s] to elevate his legs";

needs to "walk throughout the day"; "can't get organized for nothing"; and "get[s] easily

distracted."  Tr. 44, 45, 51.

The Commissioner identifies five passages from the ALJ's decision as reasons to

discount plaintiff's testimony: (1) plaintiff received conservative treatment for asthma and did

not "[w]ith the exception of the amputation of [his] right great toe," have "significant

complications of his conditions requiring hospitalization or intensive medical treatment"; (2)

plaintiff "testified that he had recently developed peripheral neuropathy affecting his hands" but

"the ALJ noted that the record did not document findings of decreased grip or pinch strength,

and Plaintiff did not report dropping items or other difficulties using his hands" and "the ALJ

also considered Plaintiff was independent with personal care and testified that he

loaded/unloaded the dishes, activities that require adequate strength and ability to grip, grasp,

and pinch"; and (3) "despite Plaintiff's great toe amputation, he walked everywhere (he did not

drive)" and "there was ample evidence that Plaintiff had a normal gait without need for an

assistive device"; (4) plaintiff "claimed difficulties getting along with others" but testified that he

spent time with his wife and grandchildren, and the medical evidence showed he had good

rapport and interactions with providers and non-medical staff"; and (5) "the ALJ noted that

[plaintiff] received limited, routine, and conservative treatment" for his mental impairments.

Def. Br. 13-15.  This evidence, however, is separate from plaintiff's testimony that he needs to

alternate sitting, standing, and walking, needs to elevate his legs, and is unable to focus and

concentrate.  Although the points the Commissioner raises may be true, they ignore the

requirements of *Brown-Hunter* that the ALJ link specific pain or symptom testimony that he

discounted to particular parts of the record.

Further, there is evidence, for example, that plaintiff did not receive conservative

treatment for his mental impairments.  Plaintiff's prescribed medications include, or have

included, the following: Effexor, Lamotrigine, Trazodone, Prozac, Risperidonek, Venlafaxine,

Hydroxyzine, and Wellbutrin.  *See, e.g.*, Tr. 249, 259, 268, 476, 568, 586, 800, 1199.  Courts

have recognized some of plaintiff's prescription medications to constitute mental health

treatment that is not "conservative." *See, e.g.*, *Wilson v. Berryhill*, No. CV 17-06967-AFM, 2018 WL 6321629, at *4 (C.D. Cal. July 9, 2018) (treatment with Prozac, Trazodone, Wellbutrin, Seroquel, Remeron, Zoloft, Ativan, Geodon, Paxil, and Buspirone was not conservative); *Childress v. Colvin*, No. EDCV 14–0009–MAN, 2015 WL 2380872, at *14 (C.D. Cal. May 18, 2015) (treatment including prescription antidepressants—citalopram and trazodone—and prescription antipsychotics—aripiprazole—was not properly characterized as conservative treatment); *Carden v. Colvin*, No. CV 13–3856–E, 2014 WL 839111, at *3 (C.D. Cal. Mar. 4, 2014) (mental health treatment not conservative where claimant's prescription medications had included Zyprexa, Depakote, Geodon, Remeron, Lithium, Zoloft, Risperdal, Wellbutrin, Seroquel, Trazodone and Buspirone).

Where the ALJ failed to provide the required clear and convincing reasons to reject plaintiff's symptom testimony, remand is appropriate because "'[the court] cannot . . . speculate as to the grounds for the ALJ's conclusions.'" *Brown-Hunter*, 806 F.3d at 495 (quoting *Treichler*, 775 F.3d at 1103). Although the ALJ provided extensive and thorough summaries of the medical records, the ALJ must also "'provide some reasoning in order for us to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence.'" *Id.* (citing *Treichler*, 775 F.3d at 1103).

## V.    Medical Opinion Evidence

Plaintiff argues the ALJ failed to properly evaluate the opinions of RN Mary Shockey. Pl. Br. 19.

As a registered nurse, RN Shockey is a medical source, but is not considered an "acceptable medical source" under the Act; accordingly, the applicable legal standard is the equivalent of a lay witness, or "other source." *Dale v. Colvin*, 823 F.3d 941, 943 (9th Cir. 2016);

SSR 06-03p, *available at* 2006 WL 2329939.  Lay witness testimony regarding the severity of a claimant's symptoms or how an impairment affects a claimant's ability to work is competent evidence that an ALJ must take into account.  *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996).  To reject such testimony, an ALJ must provide "reasons germane to each witness." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) (citations omitted).  "Further, the reasons 'germane to each witness' must be specific."  *Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2009) (citing *Stout v. Comm'r of Soc. Sec. Admin*, 454 F.3d 1050, 1053 (9th Cir. 2006)).

On October 10, 2018, RN Shockey filled out a "Medical Source Statement" form.  Tr. 716-19.  She indicated plaintiff's diagnoses as diabetes II, hyperglycemia, and long-term insulin usage and his signs and symptoms included toe amputation.  Tr. 716.  She also indicated depression, cognitive limitations, anxiety, and bipolar disorder as psychological conditions affecting plaintiff's physical condition.  *Id.*  As to plaintiff's "work capacity," RN Shockey opined that, at one time, plaintiff could sit up to two hours, stand up to three hours, and walk up to two hours.  Tr. 717.  RN Shockey further opined that in an eight-hour work day, plaintiff could sit up to two hours; stand/walk up to four hours; lift 0-5 pounds for two hours, 6-10 pounds for two hours, 11-15 pounds for zero hours, and 16-20 pounds for zero hours; and carry 0-5 pounds for one hour, 6-10 pounds for one hour, 11-15 pounds for zero hours, and 16-20 pounds for zero hours.  *Id.*  In RN Shockey's opinion, plaintiff would need to take eight unscheduled breaks during an average work day and rest for 30 minutes before returning to work; would need to lie down or recline intermittently, outside of customary breaks "to keep feet elevated above heart"; is likely to be off task 25% or more of the workday; is incapable of even "low stress" work; is likely to have "good days" and "bad days" because of his impairments; and would need to be absent from work as a result of his impairments five or more days per month.  Tr. 717-19.

RN Shockey stated that "[plaintiff] at times has been mentally able to function but this is short lived.  Most I have seen is 2-3 weeks.  H[is] physical condition has not stabilized since I started to work with him.  He cannot stay on track long enough to effect change and stabilization of his diabetes, which is resulting in continued deterioration of his physical status."  Tr. 719.

The ALJ gave "[RN Shockey's] opinion little weight because it is not supported by the record as a whole.  Although Nurse Shockey is a treating source, she is not considered an acceptable medical source under the regulations, and her opinion is not consistent and supported by the overall medical findings of record."  Tr. 21-22.

Plaintiff first contends that the ALJ impermissibly rejected RN Shockey's opinions solely because she is not "an acceptable medical source," i.e., without evaluating her opinions using the requisite agency criteria.  Pl. Br. 20-21 (citing 20 C.F.R. § 416.927(c)(1)–(c)(6), (f)).  The factors applicable to the evaluation of medical opinions from "acceptable medical sources," as specified in 20 C.F.R. § 416.927(d), can be applied to opinion evidence from "other sources" as well.  SSR 06–03p.  These factors include the following: how long the source has known and how frequently the source has seen the claimant; how consistent the opinion is with other evidence; the degree to which the source presents relevant evidence to support an opinion; how well the source explains the opinion; whether the source has a specialty or area of expertise related to the individual's impairment(s); and any other factors that tend to support or refute the opinion.  *Id.*  "Not every factor for weighing opinion evidence will apply in every case."  *Id.*  Indeed,

> depending on the particular facts in a case, and after applying the factors for weighing opinion evidence, an opinion from a medical source who is not an 'acceptable medical source' may outweigh the opinion of an 'acceptable medical source,' including the medical opinion of a treating source.  For example, it may be appropriate to give more weight to the opinion of a medical source who is not an 'acceptable medical source' if he or she has seen the individual more often than the treating source and has provided better supporting evidence and a better explanation for his or her opinion.

*Id.*

Although the ALJ in this case is not totally silent as to his reasons for rejecting RN Shockey's opinion, the reasons given—"her opinion is not consistent and supported by the overall medical findings of record"—fail to address the regularity with which RN Shockey met with plaintiff, which is an important factor for assigning weight to her opinion under § 416.927(f). *See also Garrison*, 759 F.3d at 1013-14 (holding ALJ erred by failing to recognize that nurse practitioner "qualified as an 'other source[ ]' that can provide evidence about the severity of [a claimant's] impairment(s) and how it affects [the claimant's] ability to work") (quoting 20 C.F.R. § 1513(d)) (alterations in original). The administrative record reflects that RN Shockey treated plaintiff at his home on a weekly, bi-weekly, or monthly basis from May 2016 to at least October 2018. Tr. 43, 720-1188 (treatment notes from more than 30 RN Shockey visits). While RN Shockey is not an acceptable medical source, she had a longitudinal treating relationship with plaintiff, and the medical experts upon whose opinions the ALJ relied (i.e., agency psychological consultants Dr. South and Dr. Boyd) did not have any treating relationship with plaintiff or a similar breadth of data. Moreover, RN Shockey's opinions, if given more weight, may effect the outcome of the case because she opined about various limitations relevant to the ALJ's assessment of plaintiff's RFC.

Second, plaintiff contends that "lack of support in the medical record is not a reason to reject lay testimony." Pl. Br. 20. An ALJ may discount lay testimony if it conflicts with the medical evidence. *Lewis*, 236 F.3d at 511; *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) (holding inconsistency with medical evidence constitutes germane reason). However, it is improper for an ALJ to reject lay testimony as "not supported by the objective medical evidence," without pointing to any specific evidence in support of this conclusion. *See*

*Bruce,* 557 F.3d at 1116 (holding it was improper for ALJ to discredit testimony of claimant's wife as not supported by medical evidence in record).

Here, the ALJ did not identify any specific inconsistencies and only offered his conclusions that RN Shockey's opinions were generally inconsistent and not supported by the overall medical findings of record.[8]  Tr. 22.  The ALJ did not identify which portions of RN Shockey's testimony were rejected or adopted.  *Cf. Shorter v. Saul,* 777 F. App'x 209, 211 (9th Cir. 2019) (holding ALJ properly rejected other source opinion of nurse practitioner based on inconsistency with objective medical evidence, including treatment notes showing largely unremarkable examinations and findings of improvement with medication).  Thus, a lack of support from medical records was not a germane reason to give "little weight" to RN Shockey's opinions.

In sum, the ALJ erred by discounting RN Shockey's observations.  That error was not harmless because RN Shockey opined about various limitations relevant to the ALJ's assessment of plaintiff's RFC.

## VI.   Remand

When a court determines the Commissioner erred in some respect in making a decision to deny benefits, the court may affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for a rehearing."  *Treichler*, 775 F.3d at 1099 (quoting 42 U.S.C. § 405(g)).  In determining whether to remand for further proceedings or immediate payment of benefits, the Ninth Circuit employs the "credit-as-true" standard when

---

[8] The Commissioner offers a number of inconsistencies between RN Shockey's opinion and the evidence.  Def. Br. 7-8.  Because these inconsistencies are not addressed in the ALJ's decision, the court does not address them here.  *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) ("We are constrained to review the reasons the ALJ asserts.") (internal quotation marks and citation omitted).

the following requisites are met: (1) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, (2) the record has been fully developed and further proceedings would serve no useful purpose, and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the plaintiff disabled on remand. *Garrison*, 759 F.3d at 1020. Even if all of the requisites are met, however, the court may still remand for further proceedings, "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled[.]" *Id.* at 1021.

Here, the first requisite of the *Garrison* test is met, as the ALJ failed to provide legally sufficient reasons for rejecting plaintiff's subjective symptom testimony, rejecting the state agency psychologists' opinions that plaintiff is limited to step 1-2 tasks, and giving little weight to RN Shockey's opinion.

However, the second requisite is not met, as the record in this case is not fully developed. First, even if the improperly rejected opinions of Dr. South and Dr. Boyd are credited as true, it is not clear that the ALJ would be required to find plaintiff disabled because the VE did not provide an opinion as to whether plaintiff would be able to perform jobs that exist in significant numbers in the national economy if he was additionally limited to 1-2 step tasks. Second, where the ALJ failed to properly consider the opinions of RN Shockey, remand is the most appropriate remedy. *See Treichler*, 775 F3d at 1105 ("Where . . . an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency."). "There may be evidence in the record to which the ALJ can point to provide the requisite specific and legitimate reasons for disregarding the opinions of [RN Shockey]. Then again, there may not. In any event, the ALJ is in a better position than this court to perform the task." *Crumly v. Astrue*, No. CV-08-674-

TUC-RCC, 2010 WL 3023349, at *22 (D. Ariz. June 15, 2010), *report and recommendation adopted*, 2010 WL 3023339 (D. Ariz. July 30, 2010).  Third, although the ALJ did not provide clear and convincing evidence to support his decision to discount plaintiff's testimony, the ALJ's decision may still be upheld if he provides other valid rationales.[9]  *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004).

On remand, the ALJ must (1) accept the opinions of Dr. South and Dr. Boyd that plaintiff is limited to one- to two- step tasks or provide legally sufficient reasons for rejecting them; (2) accept the opinion of RN Shockey or provide legally sufficient reasons for rejecting it; (3) accept plaintiff's testimony or provide legally sufficient reasons for rejecting it; and (4) conduct any additional proceedings as indicated by the results of the foregoing instructions.

## CONCLUSION

For the reasons discussed above, the decision of the Commissioner is REVERSED and REMANDED for further proceedings consistent with this opinion.

IT IS SO ORDERED.

DATED  November 20, 2020.

_____/s/ Youlee Yim You_____
Youlee Yim You
United States Magistrate Judge

---

[9] As there are outstanding issues that require resolution, the court does not reach the question of whether a finding of disability would be required if the improperly discredited testimony were credited as true.  *See, e.g.*, *Treichler*, 775 F.3d at 1107 (declining to reach the third step of the analysis where Plaintiff failed to satisfy the second step).